**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL FEINBERG,[1]

*Plaintiff*,

v.

FEDERAL BUREAU OF INVESTIGATION,

*Defendant*.

**Case No. 26-CV-3893**

## INTRODUCTION

1. Plaintiff Michael Feinberg brings this action against Defendant Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of improperly withheld records.

2. During the first months of the Trump administration, now-Director Kash Patel implemented sweeping personnel changes at the FBI. Patel, assisted by a group of employees known as the Director's Advisory Team, specifically targeted agents he perceived as adverse to President Trump.

3. Mr. Feinberg was one of those agents. Mr. Feinberg had a distinguished sixteen-year career at the FBI. However, in 2025, Mr. Feinberg's FBI supervisor gave him bad news. Mr. Feinberg learned that he would likely lose a promotion and instead face a demotion *and* a polygraph test. Why? Because Mr. Feinberg counted among his friends a former agent fired during President Trump's first term. Rather than face professional purgatory or worse, Mr. Feinberg resigned.

[1] Pursuant to Local Civil Rule 5.1(c)(1), the Plaintiff's residential address is being filed under seal with the Court in a separate Notice of Filing.

4. Since leaving the FBI, Mr. Feinberg has become an outspoken critic of the agency's executive leadership.

5. In May 2026, Mr. Feinberg submitted a FOIA request to the FBI seeking information related to his tenure at the agency and the circumstances surrounding his departure. This information is of significant public interest, as it sheds light on the workings of the nation's preeminent federal law enforcement agency during the current administration.

6. The FBI informed Mr. Feinberg that the estimated date of completion for his request would be 2,010 days—or roughly five and a half years—from when the FBI opened the request. When Mr. Feinberg asked whether the lengthy processing time had any connection to his public criticism of recent changes at the agency, the FBI refused to answer.

7. To date, the FBI has failed to make a determination on Mr. Feinberg's request or produce any of the requested records. Mr. Feinberg now brings this suit to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

10. Plaintiff Michael Feinberg is a former employee of the FBI.

11. Defendant Federal Bureau of Investigation ("FBI") is a federal agency within the meaning of 5 U.S.C. § 552(f)(1). The FBI is headquartered in Washington, DC and has possession, custody, and control of the records that Mr. Feinberg seeks.

## STATUTORY BACKGROUND

12. The Freedom of Information Act, 5 U.S.C. § 552, is "a means for citizens to know what their Government is up to." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004) (cleaned up). Far from a "convenient formalism," the transparency that FOIA enacts and requires serves as "a structural necessity in a real democracy." *Id.* at 172.

13. FOIA mandates that "each agency, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(3)(A). "Promptly" means "within days or a few weeks . . . not months or years." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

14. Agencies have 20 days following the receipt of a request to "determine . . . whether to comply" and notify the requester of "such determination and the reasons therefor." 5 U.S.C. § 552(6)(A)(i).

15. "[I]f the agency fails to comply with the applicable time limit provisions," the requester "shall be deemed to have exhausted his administrative remedies." *Id.* § 552(6)(C)(i).

16. FOIA vests the district courts with jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." *Id.* § 552(4)(B). The court's review is de novo. *Id.*

## FACTUAL ALLEGATIONS

*Mr. Feinberg's Distinguished Career at the FBI*

17. Mr. Feinberg served in the FBI from 2009 to 2025. During his time at the agency, Mr. Feinberg held multiple leadership positions, including as a Unit Chief within the Counterintelligence Division, Field Supervisor at the Washington Field Office, and Assistant Special Agent-in-Charge of the Norfolk Field Office.

18. Mr. Feinberg was one of the FBI's leading experts on the People's Republic of China's intelligence services. While serving as a Unit Chief within the Counterintelligence Division, he was the principal architect of an investigation into Huawei, the world's largest telecommunications company, which resulted in the simultaneous filing of charges in the U.S. District Courts for the Eastern District of New York and the Western District of Washington. For that work, Mr. Feinberg received the Director's Award for an Outstanding Counterintelligence Investigation and a Meritorious Unit Citation from the Office of the Director of National Intelligence.

19. More recently, as the Assistant Special Agent in Charge of the Norfolk Field Office, Mr. Feinberg commanded a joint SWAT and Hostage Rescue Team operation that resulted in the largest seizure of finished improvised explosive devices in FBI history. He also oversaw an investigation leading to the first charges in Department of Justice history for violations of the Espionage Act involving aerial photography.

20. In addition to awards for his investigation of Huawei, Mr. Feinberg was the recipient of numerous other honors during his time at the FBI. He received the Director's Medal of Excellence for the restructuring of two units within the Counterintelligence Division while serving as Unit Chief. Mr. Feinberg received the Office of the Director of National Intelligence's Award for an Outstanding Counterintelligence Investigation for investigative work that led to the prosecution and eventual guilty plea of an FBI employee who made multiple false statements about his relationship with Chinese nationals and entities. Mr. Feinberg also received the Office of the Director of National Intelligence's Award for Community Excellence for the management of a complex source platform.

*Mr. Feinberg Is Forced to Resign*

21. In May 2025, while he was working as the Assistant Special Agent in Charge of the Norfolk Field Office, Mr. Feinberg received a call from the Special Agent in Charge asking him about his friendship with Peter Strzok. Strzok, a former FBI employee, was fired in 2018 following the release of text messages he sent criticizing President Trump.[2]

22. The Special Agent in Charge informed Mr. Feinberg that she had been directed to call him by Dan Bongino, then-Deputy Director of the FBI. Bongino, the former host of a right-wing podcast and radio show, had never worked for the FBI before becoming the Deputy Director.[3]

23. The Special Agent in Charge told Mr. Feinberg that, because of his friendship with Strzok, Mr. Feinberg could no longer expect a promotion and in fact risked demotion. She also informed Mr. Feinberg that he would likely be subject to a polygraph test probing the nature of his friendship with Strzok. A more senior employee at the FBI subsequently warned Mr. Feinberg that he would be expected to grovel and pledge his loyalty to the political leadership to stay in his position, and that he may be asked for whom he voted.

24. Rather than comply with these demands, Mr. Feinberg resigned, five years short of eligibility for retirement and a pension.

25. Throughout his tenure at the FBI, Mr. Feinberg maintained a clean personnel record and never faced accusations of policy violations or investigative deficiencies. The Special

[2] Adam Goldman & Michael S. Schmidt, *F.B.I. Agent Peter Strzok, Who Criticized Trump in Texts, Is Fired*, N.Y. Times (Aug. 13, 2018), https://perma.cc/UN3S-ULZH.

[3] Stuart A. Thompson et al., *How Dan Bongino Would Run the F.B.I., According to Dan Bongino*, N.Y. Times (Mar. 6, 2025), https://perma.cc/GPT2-BGLX.

Agent in Charge at the Norfolk Field Office did not claim that Mr. Feinberg had violated any FBI policy or had failed to perform his assigned duties with satisfaction.

26. Mr. Feinberg's resignation was part of a significant wave of personnel changes at the FBI. Numerous leaders of the agency, including six of the FBI's most senior executives and heads of multiple field offices, were fired in the first few months of the administration.[4] President Trump described these firings as "a good thing, because they were very bad. They were very corrupt people, very corrupt, and they hurt our country very badly."[5]

27. Many of the firings targeted agents perceived as hostile to President Trump. Brian Driscoll, formerly Acting Director of the FBI, was removed after he cautioned Director Kash Patel against unlawfully firing another agent, who was incorrectly identified as the affiant for the Mar-a-Lago search warrant affidavit.[6] Similarly, after Senator Charles Grassley, Chairman of the Judiciary Committee, accused an FBI agent who had worked with Special Counsels Jack Smith and Robert Mueller of "animosity toward President Trump," the agent was fired.[7]

28. News reports connected those sweeping changes at the FBI to the Director's Advisory Team ("Advisory Team"), a group of individuals brought in to assist Director Patel.[8] The Advisory Team is reported to have included a former employee of SpaceX as well as an ex-

---

[4] *See* Ken Dilanian et al., *Trump Administration Forces Out Multiple Senior FBI Officials and January 6 Prosecutors*, NBC News (Jan. 31, 2025), https://perma.cc/6AD9-RCHT; Adam Goldman, *As Ousters Continue, F.B.I. Singles Out Employee over Friendship with Trump Critic*, N.Y. Times (June 5, 2025), https://perma.cc/9HAY-PSCM; Complaint at 2, *Driscoll v. Patel*, No. 25-03109 (D.D.C. Sept. 5, 2025) ("*Driscoll*").

[5] Dilanian et al., *supra* note 4.

[6] *Driscoll*, *supra* note 34 at 46-51.

[7] Glenn Thrush & Alan Feuer, *Under Patel, F.B.I. Scours Its Records to Discredit Trump Opponents*, N.Y. Times (Jan. 18, 2026), https://perma.cc/Q4FN-M4RC.

[8] Dilanian et al., *supra* note 4; Thrush & Feuer, *supra* note 7.

aide to Representative Jim Jordan, a noted critic of the FBI.[9] The Advisory Team was reportedly tasked with scouring the FBI's files in order to identify employees who had investigated President Trump and his allies.[10]

*Mr. Feinberg's Public Commentary About the FBI*

29. Following his departure from the FBI, Mr. Feinberg has become a contributor to Lawfare, which covers issues of national security and law, and served as the director of the FBI Support Network at the nonprofit organization Justice Connection.

30. Mr. Feinberg has spoken publicly about his resignation from the FBI and shared critical views about the agency's leadership with the press.

31. In an article describing his resignation, Mr. Feinberg wrote that "[u]nder Patel and Bongino, subject matter expertise and operational competence [have been] readily sacrificed for ideological purity and the ceaseless politicization of the workforce."[11] He also expressed concern that "newer and younger employees are going to become acculturated to a politicized bureau."[12] He has described Kash Patel and Dan Bongino as "hav[ing] no idea what they're doing" and "playing dress-up."[13]

32. Furthermore, Mr. Feinberg has criticized the diversion of "resources and efforts . . . from hostile foreign intelligence services and other serious threats to the homeland to

---

[9] Ken Dilanian & Ryan J. Reilly, *Elon Musk Affiliate in FBI Director's Office Sparks Fear of Partisan Interference*, NBC News (Jan. 29, 2025), https://perma.cc/ZAR9-GVK2.

[10] Thrush & Feuer, *supra* note 7.

[11] Michael Feinberg, *Goodbye to All That*, Lawfare (July 3, 2025), https://perma.cc/9EBS-QEBW.

[12] Quinta Jurecic, *The FBI's Leaders 'Have No Idea What They're Doing,'* The Atlantic (July 29, 2025), https://perma.cc/U8XU-WHF4.

[13] *Id.*

focus on minor immigration status offenses."[14] He described himself as "absolutely furious" at a request from an FBI agent assisting with ICE roundups to purchase face coverings.[15] Mr. Feinberg believes that the new priorities at the FBI "make[] us all less safe." [16]

33. Mr. Feinberg now writes for a popular audience about the FBI. As part of this work, he seeks to better understand the changes to the agency implemented in this administration. Mr. Feinberg views his time serving the country while working at the FBI as an honor and a privilege, and he views his public speaking and writing as an effort to address and ameliorate the FBI's shortcomings.

*Mr. Feinberg's FOIA Request to the FBI*

34. On May 28, 2026, Mr. Feinberg submitted a FOIA request to the FBI. He requested several categories of communications that referenced him and to which he was a party. Mr. Feinberg also sought his background investigation materials and award nominations. *See* Ex. A.

35. Mr. Feinberg took care to be as granular as possible in crafting his FOIA request given his own prior experience responding to FOIA requests while working at the FBI. Mr. Feinberg constrained his requests to a narrow time period. The majority of the communications that he requested were generated in the first half of 2025. Mr. Feinberg specifically requested unclassified or redacted materials to avoid implicating any exemptions under FOIA. He also identified the exact enclaves and systems in which the requested documents are held.

---

[14] Feinberg, *supra* note 11.

[15] Jurecic, *supra* note 12.

[16] Feinberg, *supra* note 11.

36. On June 12, 2026, Mr. Feinberg received a letter from the FBI acknowledging that his request "ha[d] been received." The letter did not provide any information about which documents the agency planned to produce or whether it intended to invoke any exemptions. *See* Ex. B.

37. On July 16, 2026, Mr. Feinberg sent an email to the FBI. In that email, Mr. Feinberg raised two issues. First, he inquired about the status of his request. Second, Mr. Feinberg asked the FBI to confirm that its "determinations or responsiveness" had not been affected by his "writings and commentary" that were "critical" of recent changes at the agency. *See* Ex. C.

38. He received a response the following day stating that his request was "in Initial Processing." The email informed him that "the estimated date on which the FBI will complete action on your request is 2,010 days from the date the FBI opened your request." *See id.*

39. That response email did not address Mr. Feinberg's second question about the relationship, if any, between his outspoken public criticism of the FBI's leadership and the response time for his FOIA request.

40. To date, Mr. Feinberg has received no other communications from the FBI regarding the request.

## CLAIM FOR RELIEF

### COUNT ONE
### VIOLATION OF FOIA, 5 U.S.C. § 552 – WRONGFUL WITHHOLDING OF AGENCY RECORDS

41. The preceding paragraphs are incorporated and realleged here.

42. Mr. Feinberg submitted a proper FOIA request that sought records within the possession, custody, and control of Defendant.

43. Defendant is wrongfully withholding records requested by Mr. Feinberg by failing to make a determination on Mr. Feinberg's request within the 20-day time period prescribed by 5 U.S.C. § 552(a)(6)(A) and by failing to produce records responsive to Mr. Feinberg's request.

44. Mr. Feinberg has exhausted administrative remedies.

45. Mr. Feinberg is entitled to relief requiring Defendant to process and produce all non-exempt records responsive to Mr. Feinberg's request.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michael Feinberg prays that this court:

A. Declare unlawful Defendant's failure to comply with FOIA;

B. Declare that Mr. Feinberg is entitled to disclosure of the requested records;

C. Order Defendant to immediately process Mr. Feinberg's request and to disclose responsive records;

D. Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

E. Award Mr. Feinberg's reasonable attorney's fees and costs incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

F. Award any other such relief that this Court deems appropriate.

Respectfully submitted,

/s/ James I. Pearce
JAMES I. PEARCE
(D.C. BAR NO. 90042280)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8770
jpearce@washingtonlitigationgroup.org

*Counsel for Michael Feinberg*